[No. 12976.  Department Two.  May 23, 1916.]

American Savings Bank & Trust Company, *Appellant*, v. National Surety Company, *Respondent*.[1]

Insurance—Fidelity Insurance—Bond—Construction—Actions—Failure of Proof. An indemnity bond insuring the fidelity of certain employees named in a schedule is in legal effect a separate bond as to each, and in no sense a blanket bond, where the limit of liability is separately stated at varying sums as to each employee and it is provided that the previously known dishonesty of an employee is a ground of defense, terminates the liability as to subsequent acts, fully earns the premiums paid, and requires the insured to render assistance in bringing the employee to justice; hence an action on the bond for loss by theft must fail where plaintiff is able to prove only that the theft was committed by one or more of three employees, and is unable to show which one was guilty.

Appeal from a judgment of the superior court for King county, French, J., entered July 1, 1915, upon granting a nonsuit, dismissing an action upon a fidelity insurance bond, tried to the court and a jury. Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.

*C. B. White, Skeel & Whitney*, and *Wright, Kelleher & Caldwell*, for respondent.

Parker, J.—The plaintiff, American Savings Bank & Trust Company, seeks recovery upon a fidelity insurance bond given to it by the defendant, National Surety Company. The cause proceeded to trial in the superior court sitting with a jury, when, at the close of the evidence introduced on behalf of the plaintiff, the court, upon motion of counsel for the de-

[1]Reported in 157 Pac. 877.

fendant, granted a nonsuit in its favor and dismissed the action. From this disposition of the case, the plaintiff has appealed to this court.

On November 30, 1912, respondent executed and delivered to appellant the bond sued upon, which, so far as necessary for us to here notice its terms, reads:

"The National Surety Company (Surety) in consideration of the payment of an annual premium computed at an agreed rate, and payable on the 1st day of March, during each and every year that this bond shall continue in force, hereby agrees to make good within sixty days after satisfactory proof thereof to American Savings Bank & Trust Company, Seattle, Wash., employer, any loss which the employer may sustain by reason of any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion or abstraction, on the part of any employee named in the schedule hereto attached, or hereafter added to said schedule by an acceptance notice, executed by the surety, as herein provided, in any position in the employer's service and committed after the 1st day of March, 1913, as to any employee set forth in said schedule, or after the date of such acceptance notice, as to any employee so added to said schedule, and before the termination of this bond, as to any employee covered hereby. The surety's liability hereunder shall, in no event, exceed, on behalf of any one employee, the amount set opposite the name of such employee in said schedule, or said acceptance notices.

"Provided, that the employer shall not have had at the date hereof, or at the date of adding any new employee to said schedule, any knowledge of any of said employees, having been guilty of any act of personal dishonesty in any position in the employer's service, or in the service of any other person, firm or corporation, and shall have notified the surety (at surety's expense) by telegraph and registered letter giving all known particulars, addressed to its Home Office, No. 115 Broadway, New York City, within ten days after becoming aware of any such act or facts indicating such act by any of said employees, or any such loss, and shall have, within ninety days after discovery of any such loss, filed with the surety an itemized statement of such loss, and produced for investigation all books, vouchers and evidence in the employer's possession and rendered every assistance (except pecuniary),

to aid in bringing such employee to justice which the surety may require; . . .

"The liability of the surety hereunder shall immediately terminate as to subsequent acts of any employee, (a) Upon discovery by the employer of any default hereunder by such employee; (b) Any employee leaving the services of the employer; (c) thirty days after receipt by the employer of written notice from the surety of its desire to terminate same, as to any or all of said employees.

"Upon the termination of this bond by discovery of default on the part of any employee, the premium paid as to such employee, shall be deemed fully earned."

The schedule attached to the bond contains the names of appellant's employees, eighteen in number, with the amount set opposite the name of each employee showing the extent of respondent's liability for "any act of personal dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion or abstraction" on the part of such employee. It appears from the schedule that the limit of respondent's liability as to each of these employees ranges from $1,000 to $10,000.

Appellant alleges in its complaint, in substance, that, while the bond was in force, there was wrongfully converted and abstracted from its funds the sum of $8,500, and that, at the time this sum was so abstracted, three certain employees of appellant named in the complaint, whose names appear in the schedule attached to the bond, and no others, had access to the funds from which the $8,500 was so taken. It is not alleged in the complaint as to which one of appellant's employees took the money; nor is it alleged, except possibly inferentially, that the money was taken by any of the three employees who had access to appellant's funds. In other words, there is no direct allegation in the complaint as to who abstracted this money from appellant's funds. The complaint was demurred to by counsel for respondent, which demurrer was by the court overruled, and thereafter an answer was filed tendering issue upon the facts.

We may assume that, upon the trial, the evidence intro-
duced in appellant's behalf tended to show that one or the
other of two of appellant's employees who had access to its
funds took therefrom the $8,500 in question.   This evidence,
however, went no farther than to show that these two em-
ployees had equal means of access to the particular funds
from which the money was taken.   We think the evidence
shows without contradiction that a third employee also had
equal means of access to these funds, though we put that
aside for the purpose of argument, in order to follow more
closely the argument of counsel for appellant.   No claim is
made by counsel for appellant that the evidence shows, or
tends to show, which one of these employees took the money,
but their argument proceeds apparently upon the theory
that it is enough that the evidence tends to show that one or
the other of these two, or at the most three, employees took
the money without tending to show which one took it.   As said
in their brief:

"Whatever may be the individual opinion of the repre-
sentatives of the plaintiff as to whose wrongful act is re-
sponsible for the loss of this money, we are not called upon
for an expression, because we are insured against the act of
both of them.   But we do say this in all candor: That when
money disappears from a safe to which two men and only two
have the combination, some explanation is required; and
human nature is so constituted that in the absence of some
explanation the conclusion will be drawn that one or the
other misappropriated the money."

So we have the same condition shown in the evidence as is
shown by the allegations of the complaint, to wit, that some
one of several employees, without any showing as to which
one, abstracted this $8,500 from appellant's funds.   Indeed,
appellant seems to have studiously avoided charging its loss
to the dishonesty of any particular employee.

Now if appellant had been indemnified against the dis-
honesty of each of its eighteen employees by a separate writ-

ing, instead of by a single writing, referring to each employee and specifying separately the amount of respondent's liability for the dishonesty of such employee, as this bond plainly does, an action upon such a writing could not be successfully maintained by allegations and proof which pointed with no greater certainty to the dishonesty of such employee than the allegations and proof in this case point to the dishonesty of some single employee. The complaint, as well as the evidence, in such case would be insufficient to sustain a cause of action.

We are constrained to hold that this writing is, in legal effect, a separate bond as to each of the eighteen employees named in the schedule attached thereto, and that it is in no legal sense a blanket bond. Let us notice some of its provisions so indicating. We have noticed that the schedule attached to the bond shows that the limit of respondent's liability for the dishonesty of each of its eighteen employees is stated separately as to each employee. It so happens that the limit of respondent's liability for the dishonesty of the three employees who had access to the particular funds from which the $8,500 were abstracted is $10,000 as to each, but that is a coincidence of no consequence so far as our present problem is concerned. The fact that the limit of respondent's liability growing out of the acts of dishonesty of each of the whole eighteen employees is separately stated and fixed at a specified sum points, it seems to us, unerringly to the separateness of respondent's liability as to each employee named in the schedule. Manifestly the stating in the schedule of these separate limits of liability would have been to no purpose whatever had the bond been intended as a mere blanket insurance against loss through the dishonesty of appellant's employees. No name of any employee is in the body of the bond, but we read there that:

"The surety's liability hereunder shall, in no event, exceed, on behalf of any one employee, the amount set opposite the name of such employee in said schedule, or said acceptance notice."

We read in the body of the bond the following:

"Provided, that the employer shall not have had at the time hereof, or at the date of adding any new employee to said schedule, any knowledge of any of said employees, having been guilty of any act of personal dishonesty in any position in the employer's service, or in the service of any other person, firm or corporation."

This provision plainly gives to respondent the right to defend upon the ground of the previously known dishonesty of an employee on the part of appellant. Manifestly respondent could not avail itself of any such defense unless appellant proceeded in the prosecution of its action by allegations and proof upon the theory that some named one of its employees, for the dishonesty of which respondent was liable, had committed the claimed act of dishonesty resulting in appellant's loss and respondent's liability.

It is also provided in the body of the bond that appellant shall have "rendered every assistance (except pecuniary) to aid in bringing such employee to justice which the surety may require." The words "such employee" manifestly refer to some particular employee whose act of dishonesty has rendered respondent liable under the bond. This condition of the bond would be of no value to respondent unless the claim of dishonesty of an employee made by appellant referred to some named employee for whose dishonesty respondent is liable under the bond.

We also read in the body of the bond the following:

"The liability of the surety hereunder shall immediately terminate as to subsequent acts of any employee. (a) Upon the discovery by the employer of any default thereunder by such employee. . . .

"Upon the termination of this bond by discovery of default on the part of any employee, the premium paid as to such employee, shall be deemed fully earned."

Now suppose that this case had been permitted to go to the jury and a verdict had been returned against respondent. As to which one of these two or three employees having access

to the particular funds from which the $8,500 was abstracted would respondent's liability under the bond cease as to subsequent acts of such employee? Manifestly the verdict would furnish no answer to this question. It seems to us that respondent has the right under the terms of the bond to have its liability determined in such manner as to answer this question. We cannot escape the conclusion that this bond is, in legal effect, a separate bond as to each employee named in the schedule attached thereto.

We conclude that both the complaint and the proof offered in support of the allegations thereof are wholly insufficient to support any cause of action against respondent in this case, because of the fact that, as we view it, this is in law a separate bond as to each employee named in the schedule attached thereto, and no employee has been named, either in the complaint or proof, with any degree of certainty, whose dishonesty is the result of appellant's claimed loss.

The judgment is affirmed.

MOUNT, MAIN, and HOLCOMB, JJ., concur.

MORRIS, C. J., took no part.