[No. 23133.  *En Banc.*  October 27, 1931.]

JAMES PHELAN, *Respondent*, v. S. W. JONES *et al.,*
*Appellants.*[1]

*Hamblen & Gilbert (Philip S. Brooke,* of counsel),
for appellants.

*Cannon, McKevitt & Fraser (Frank J. Blade,* of
counsel), for respondent.

[1]Reported in 4 P. (2d) 516.

MILLARD, J.—Alleging that a Ford sedan in which he was riding was crowded off of the highway and overturned by a truck owned and operated by S. W. Jones, doing business under the firm name of Jones Auto Freight Company, plaintiff brought this action against Jones and his surety to recover for personal injuries sustained as a result of the accident. Trial of the cause to a jury resulted in verdict in favor of the plaintiff. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendants appealed.

Appellants first contend that there was no substantial evidence to support the verdict, therefore the motion for judgment notwithstanding the verdict or the motion for a new trial should have been granted.

"We have uniformly held that a motion for judgment notwithstanding the verdict involves no element of discretion, and can not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict. . . . In case of a conflict of the evidence, the motion should be denied, even though the conflict be such that the trial court would be justified in its discretion in granting a new trial. The basis of the motion must be such a state of facts as warrants the granting of the motion without trespassing by the court on the province of the jury." *Lee v. Gorman Packing Corporation,* 154 Wash. 376, 282 Pac. 205.

The motion for judgment notwithstanding the verdict, and the motion for a new trial on the ground of the insufficiency of the evidence, were properly denied, it clearly appearing from the facts, summarized as follows, that the verdict is supported by substantial evidence.

The accident occurred about ten o'clock Sunday morning, September 15, 1929, on the Pend Oreille high-

way about one mile south of Newport. Respondent, with a young child on his lap, was riding in the front seat of a Ford sedan owned and operated by his son-in-law Carl Limberg. In the rear seat were Carl Limberg's wife, his brother and another child. As the Ford sedan, traveling twenty to twenty-five miles an hour, approached a curve on the highway, a Ford auto truck was observed approaching the sedan from the opposite direction on the wrong side (Limberg's right side) of the road, and proceeding at a speed of from thirty to forty miles an hour. The truck rounded the curve on the wrong side of the road, passed the sedan at approximately the apex of the curve, at which point the truck came within less than twelve inches of striking the sedan, which was then traveling on the extreme right side—in fact, on the gravel shoulder—of the highway to avoid collision with the truck. Thus forced off the highway by the truck, and the gravel shoulder giving way, the sedan was overturned, and respondent sustained injuries to recover for which he brought this action. The truck did not stop, the driver thereof either not knowing or not caring that he had crowded the sedan off the highway. If the truck driver did not see what he had done, there were no eye-witnesses to the accident other than the occupants of the sedan.

Appellant Jones used a Ford truck on Sundays, traveling over this highway to deliver shipments of milk to a dairy products company in Spokane. That truck would pass the place where the accident occurred about the time the accident happened. The driver of the sedan was, at the time of the accident, positive that number "7" was on the license plate of the truck. The Ford truck, which was later identified as the offending vehicle, bore an Idaho license plate in front of the radiator, which plate had thereon a capital "T" to the

left of the numerals and in line with and of the same
height as the numerals. The "T", in the hasty glance
thereat by Limberg at the time of the accident, was
mistaken for a "7". The driver of the sedan described
the truck (a description gained at the time it speeded
by the sedan) as a box-covered Ford truck, with wood
part way up from the bottom on the sides, the upper
part of the box covering appearing to be canvas; that
the body was yellowish brown and a strip of black
material was along the top edge. This is a fairly ac-
curate description of the truck which later was iden-
tified as the one causing the accident.

On November 17, 1929, Carl Limberg, in company
with three other persons, visited appellant Jones in
Priest River, Idaho. The particulars of the accident
were related to Mr. Jones, to whom was given a
description of the truck which Limberg claimed caused
the accident. Jones admitted that he operated a Ford
truck of the description given, and that it was used on
Sundays to haul milk over this route to Spokane; that
it would pass the place of the accident about the time
the accident occurred.

Jones' search for a record of trips resulted in his
finding a loose yellow slip written upon by a blue
carbon only. Jones stated that was the carbon copy
of the driver's report of the trip to Spokane on Sep-
tember 15, 1929; that the loose yellow carbon copy did
not clearly show what truck made the trip, but that
it appeared to have a word or part of a word of three
or four letters written along the line. Jones explained
that, if a big truck had been used, a "1" or "2" would
be written on the report, and if the Ford truck had
been so employed that day, the word "Ford" would
appear on the report. Jones, being uncertain whether
it was "Ford" written on the slip, took the four men
to locate the driver, Otto F. White, to ascertain

whether the driver would remember whether the Ford was used Sunday, September 15, 1929. The driver was not found, Jones explaining that he had not returned from his trip to Spokane in the Ford truck. Jones' promise to have the driver check with the bookkeeper in Spokane the original slip must have been forgotten, as it does not appear that the promise was ever fulfilled.

Carl Limberg, and the three other members of his party, while returning that day to Spokane, drove through Newport, at which place Limberg recognized a Ford truck parked by the side of the road as the one which had forced his sedan off of the highway September 15, 1929. The truck answered the description gained by Limberg at the time of the accident. The truck was in charge of driver Otto F. White, the driver for whom Jones made his search in Priest River that day and failed to find. It is not disputed that the Ford truck in Newport on November 17, 1929, belonged to appellant Jones. There is testimony that the driver admitted then that it was the same truck driven by him to Spokane September 15, 1929; that, when told that the truck caused the accident out of which this controversy arose, the driver stated that he made the trip on that day, and that he used one of the big trucks.

Appellants endeavored to prove by the book of carbon slips that, on September 15, 1929, a certain truck made a trip to Spokane driven by Fred White, and not by Otto F. White; that the number of the truck, as recorded on the report slip, was rather indistinct, but it looked like a "3", and that truck No. 3 is a large "White" truck and was not the truck involved in the accident.

A question of fact was presented for determination of the jury. Limberg identified the truck owned by Jones as the one which crowded his sedan

off of the highway. His description was not as minute as it probably would have been had he been given more time—that is, had the truck stopped instead of continuing its mad course on the wrong side of the highway—but it was sufficient to go to the jury. That Otto F. White drove Jones' Ford truck Sunday, September 15, 1929, over the Pend Oreille highway, and crowded the sedan off of the road, the jury were doubtless convinced. Their verdict so indicates.

The record of trips made is very unsatisfactory. Jones' explanation of the whereabouts of his Ford truck at the time of the accident is also very unsatisfactory. The record kept by Jones does not disclose what the Ford truck was doing on that day or where it was. The truck made the trips regularly over that route on Sundays, but on this Sunday a defense in the nature of an alibi was attempted to be proved. Where was the Ford truck on Sunday, September 15, 1929? Was not that information available to appellant Jones? If in fact he had a record that would have disclosed that another truck made the trip over the Pend Oreille highway on the date in question, and that the Ford truck was in the garage or on another trip elsewhere, surely that evidence would have been introduced. The explanation that Fred White on September 15, 1929, drove a "White" truck for appellant on that route, was not believed by the jury. Their finding forecloses any question as to what truck was on the route that day.

The identification was sufficient to carry the case to the jury. A case somewhat similar to the case at bar is *Bowling v. Roberts,* 235 Pa. 89, 83 Atl. 600, in which was involved the identity of defendant's truck as the one which frightened plaintiffs' horse and caused injury to the plaintiff. The court said:

"It would be difficult for the plaintiffs to describe more accurately than they did the automobile which frightened their horse. To require a plaintiff under such circumstances to testify to the number or give a minute description of the machine which caused the accident, would frequently defeat a meritorious cause of action. It cannot be expected, and therefore it is not required. While the burden is upon the plaintiff in such cases to prove whose machine was responsible for the accident resulting in his injury, and he must identify it to the satisfaction of the jury, he is not required to do an impossible thing, but only to produce such evidence as will satisfy the minds of twelve intelligent jurors of the identity of the machine. . . . as suggested above, the rapidity with which an automobile travels, and especially the speed at which this one was going, would prevent a more specific identification than that given by the plaintiffs."

In *Kohanek v. Rudie, Wilhelm Warehouse Co.,* 129 Ore. 642, 276 Pac. 693, the plaintiff was forced to the left, so that the truck he was operating collided with a street car. The defendant denied that his truck caused the accident. The court said as to this defense:

"The second point relied upon by the defendant is in the nature of an alibi. At the conclusion of the testimony in the case, the defendant moved for a directed verdict, upon the ground that the plaintiff had failed to identify the defendant's truck. The court denied the motion, and, we think, properly so. There is much testimony in the record from which the jury had a right to infer that the defendant's truck was the truck involved in the accident. Dallas Whittle, one of the defendant's truck drivers, denies that he was the operator of the truck that indirectly caused the accident. He admits, however, that he was at the scene of the accident within a short time thereafter. The accident happened at 9:30 A. M., August 3, 1927. First testifying in that regard, he says that he was in the neighborhood of the accident about 9:45 A. M. on that day. Later on, he puts the time at about 10:15 A. M. But the record shows that the defendant's truck driver

was operating a tractor truck and was hauling pipe of different sizes on the morning in question. Whittle says that he was loaded with about 6 tons of pipe at the Luckenbach Steamship dock at about 9:00 A. M., and that in the front end of his truck he carried barrels. A number of plaintiff's witnesses identified the truck involved in the collision as a truck loaded with pipe and boxes, and some stated that it was loaded with bundles of steel and boxes or barrels. At all events, after a careful perusal of the evidence, we are satisfied that the court did not err when it denied the defendant's motion for a directed verdict. A trial court will direct a verdict only when there is a complete absence of proof on some essential issue, or when there is no conflict in the testimony and it is susceptible of only one construction. Where there is a dispute as to the facts, or where reasonable minds might draw different inferences, the question should be submitted to the jury."

*Barker v. Savas,* 52 Utah 262, 172 Pac. 672, was an action for the wrongful death of a boy killed by an automobile when the boy was riding his tricycle by the side of the highway. No one witnessed the collision. Several persons saw a truck answering the description of defendant's truck pass along that highway a short time prior to the finding of the boy's dead body by the side of the road. In that case, as in the case at bar, the defendant denied that the description of the car identified it as his. The facts in that case are in many respects like the facts in the case before us. The court said, in reviewing the facts:

"It is described by all the witnesses as a truck automobile, light-colored top and dark body. Some of the witnesses say that the automobile was going very fast. The witnesses agree substantially as to the time when the truck went by, which varied all the way from twelve-thirty to one o'clock p. m. One or two witnesses recognized the truck as one which the Greeks drove between Salt Lake and Bingham. There is, however, no controversy concerning the fact that the defendant

Andrew Savas, at about that time, drove over the road in just such a vehicle, going north, and it undoubtedly was the one seen and testified about by the witnesses above named. He was on business for the defendants. The testimony further tends to show that no other automobile passed over the road, in either direction, for some time before or after the truck passed. . . . As will be seen, the evidence as to the accident itself is almost entirely circumstantial. No eye saw it as far as the record discloses, and the jury that tried the case was compelled to ascertain the facts from such inferences as were warranted from the circumstances detailed by the witnesses. . . . This was the only automobile that passed in either direction at or near the time of the accident. If circumstantial evidence is permissible in any case and the jury is permitted to infer facts therefrom, how can this court, in the light of these circumstances, say there is no substantial evidence to sustain the inference that the defendant's automobile struck the boy and caused his death? The evidence, we believe, was sufficient to take the case to the jury and sustain its verdict independent of the controverted admission of the defendant that something happened to him, and he looked back and saw the boy lying on the side of the road. The truth of this alleged admission, however, was a matter to be determined by the jury.''

It was a clear case of negligence on the part of the driver of the truck, a flagrant abuse of the highway law which was enacted in recognition of the danger of driving on the wrong side of the highway in rounding the curve.

''(8) It shall be the duty of every person operating or driving any motor or other vehicle, . . . to keep to the extreme inside of all curves to the right and upon the extreme outside of all curves to the left.'' Rem. 1927 Sup., § 6340.

The driver of the sedan had no means of protecting himself from such driving. He did all that was humanly possible to avoid a collision—crowded his

automobile to the extreme limit of the right side of the highway on to the gravel portion thereof to avert the accident—but in reckless disregard of the statute, and careless of human life, the truck driver continued on his mad run. The truck driver was guilty of the grossest negligence.

To the jury were submitted upon substantial evidence the question of the identity of the offending truck and the question of the negligence of the driver thereof. Those questions were resolved in favor of the respondent. The finding of the jury, in a situation such as is presented by the facts in the case at bar, is conclusive.

Appellants' motion for a new trial upon the ground of newly discovered evidence was denied. Such denial, contend appellants, constituted error.

There was testimony at the trial that, a few minutes following the accident, two men in a truck arrived upon the scene and transported in their truck to the hospital at Newport the respondent, Mrs. Carl Limberg and Mr. Limberg's brother. The two men in the truck could not, though appellants and respondents endeavored to locate them, be found in time to testify at the trial. Subsequent to the trial, it was discovered that the two men who were in the truck were Curt Haskins and Homer Burns. The motion for a new trial was based upon the affidavits of those two men and three other persons.

The affidavits of Haskins and Burns are to the effect that they departed from Spokane about eight o'clock the morning of September 15, 1929, for Priest River, Idaho, in a GMC truck with a load of tires; that, about three miles south of the point of the accident, they were passed by a Ford sedan traveling at a speed estimated at fifty to fifty-five miles an hour; that, seven or eight minutes later, they arrived at the

place where the sedan was overturned; that the sedan was in the ditch on a curve; that they arrived at this point between nine and ten o'clock in the morning; that they were familiar with the trucks of Jones Auto Freight Company, and that none of the Jones trucks passed the Ford sedan between the time the Ford sedan passed affiants' truck and the time the affiants found the sedan in the ditch; that they took the injured man, Mrs. Limberg and Mr. Limberg's brother to the hospital; that the people in the sedan admitted that the speed of the sedan was the cause of the running off of the road and overturning; that none of the occupants of the sedan stated that the sedan was crowded off of the highway by an auto truck.

Another affidavit is by the manager of the hospital to which the injured were taken. The affidavit recites that Mrs. Limberg and Mr. Limberg's brother stated to the manager that the accident was caused by the speed of the car while endeavoring to negotiate the curve; that neither mentioned the sedan was crowded off of the highway by a truck.

Another person made an affidavit that, in the fall of 1929, four men, presumably Carl Limberg and three others, called at his place of business and stated they were endeavoring to locate a Chevrolet truck which was operating on the highway in the fall of 1929.

The gist of another affidavit is that four men called upon appellant Jones at Priest River, Idaho, in the fall of 1929, examined the trucks of the Jones Auto Freight Company in the garage, and stated that none of those trucks was involved in the accident, but that it was a Ford or Chevrolet truck which caused the accident; that nothing more was thought of the matter by appellant Jones, in view of the letter from respondent's counsel that one of the numbers in the

Washington license was a ''7'', whereas the Washington license of the Ford truck did not contain a ''7''.

The affidavits of respondent and his witnesses controvert the affidavits of appellants. If the affidavits of respondent are to be believed, the two men who arrived upon the scene of the accident shortly after it occurred were in a Chevrolet truck and did not have a load of tires or any other commodities; in fact, their truck was empty. The sedan did not pass a truck of any kind that day. The two men were informed ''that a brownish covered truck had taken the whole road'' and forced the sedan to take the shoulder to avoid a head-on collision. All of the averments of appellants' affidavits are denied by respondent's counter-affidavits.

A summary of the evidence at the trial is recited above. A reading of those facts and the averments of the affidavits upon which the appellants base the motion for a new trial, affirmatively shows that the new evidence is merely cumulative or impeaching. The only purpose the new evidence could serve would be to tend to prove that it was impossible for the Ford truck of appellant Jones to have caused the accident. That was the main issue upon the trial. The evidence adduced on behalf of the appellants was positive, and to the effect that their Ford truck was not at the point where the accident occurred on September 15, 1929. The jury did not believe appellants' records introduced to support that alibi. The defense theory presented by the newly discovered evidence was that only one truck, and it not the property of the appellants, was at the scene of the accident; and the parties in that truck averred that respondent and his witnesses made admissions contrary to their testimony at the trial.

We held in *Libbee v. Handy*, 163 Wash. 410, 1 P. (2d) 312, that the trial court is not warranted in grant-

ing a new trial on the ground of newly discovered evidence where it appears, as it does in the case at bar, that the evidence is merely cumulative or impeaching.

In *Deitchler v. Ball,* 99 Wash. 483, 170 Pac. 123, affidavits of two persons to the effect that they were present at the time of the accident and that the appellant's car did not injure the respondent, were the basis of a motion for a new trial on the ground of newly discovered evidence. We held that the principal issue upon the trial was whether appellant's car was the offending vehicle, and that the newly discovered evidence was merely cumulative of evidence heard by the court at the trial, therefore the court properly denied the motion.

In the case at bar, there was no abuse of discretion by the trial court in denying the motion for a new trial. The newly discovered evidence was merely cumulative and corroborative and, to some extent, impeaching. The affidavits and counter-affidavits were considered on the motion for a new trial by the trial court who heard the testimony at the trial. We assume that the trial court regarded the new evidence as not likely to change the result upon a new trial.

"The question whether a different result is probable or ought to follow is, from its nature, one peculiarly addressed to the discretion of the trial court. That discretion was amply invoked by the moving and counter affidavits. No rule is more strongly supported, both in reason and by authority, than that the exercise of that discretion will not be disturbed except in case of manifest abuse." *Roe v. Snyder,* 100 Wash. 311, 170 Pac. 1027.

"It has been repeatedly and consistently held in this state that it is not error to refuse to grant a new trial when the newly discovered evidence is merely cumulative and corroborative, and that the granting of a new trial upon the ground of newly discovered evidence, whether cumulative or not, is, from its nature,

peculiarly within the discretion of the trial court, and the exercise of that discretion will not be disturbed except in cases of manifest abuse." *Molitor v. Blackwell Motor Co.*, 112 Wash. 279, 191 Pac. 1103.

The judgment is affirmed.

HOLCOMB, BEELER, PARKER, MAIN, MITCHELL, and HERMAN, JJ., concur.

BEALS, J. (dissenting)—In my opinion, the trial court should have granted appellant's motion for a new trial, and, in denying the same, committed reversible error. I therefore dissent.

TOLMAN, C. J., concurs with BEALS, J.