[No. 24576. Department Two. November 27, 1933.]

ROSE E. BENNETT, as *Administratrix, Respondent,* v. KING COUNTY CAB COMPANY *et al., Appellants.*[1]

[1]Reported in 27 P. (2d) 125.

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellants.

*Reuben Lee Crandell,* for respondent.

TOLMAN, J.—Respondent, as the personal representative of James G. Bennett, deceased, brought this action to recover for the wrongful death of Bennett. The complaint alleges that the deceased met his death by reason of the wrongful and negligent operation by the defendant King County Cab Company of one of its automobile taxicabs. The facts constituting the negligence and the results flowing therefrom are pleaded in detail.

In order to state a cause of action against the defendant Home Indemnity Company, the complaint contained the following:

"That the defendant Home Indemnity Company is and at all times herein mentioned has been a corporation engaged in the writing of liability insurance within the state of Washington, and said defendant did prior to the 18th day of August, 1931, issue its policy of liability and property damage insurance on the application of and on behalf of said defendant, the King County Cab Company, conditioned among other

things, for the payment of damages resulting from personal injuries and damages to persons injured and damaged by reason of the negligent operation of the automobile taxicabs of the defendant, King County Cab Company, under the name of Red Top Cab Company as aforesaid, in the conducting of the business of said defendant Cab Company and the operation of its automobile taxicabs in Seattle, Washington, which said indemnity insurance was at all times herein mentioned in full force and effect, all as provided by the laws of the state of Washington in such case.''

The case was tried to a jury, which rendered a verdict against both defendants. From a judgment on the verdict, this appeal is prosecuted.

The first two assignments of error relate to the admission of evidence. As to the first of these, it appears from the record that, on motion of the defense, the court struck the testimony to which objection was made, and instructed the jury to disregard it. The court was not asked to do more. Were we to assume that the matter was so prejudicial as not to be curable by the instruction to disregard, still, in the absence of a motion for a mistrial or something of like nature, there is nothing for us to review. The trial court granted all that was asked of it, and there was no error in not discharging the jury on the court's own motion.

The second item of evidence objected to was a police report of the accident, admitted over the objection that it was hearsay. We have examined the report with some care, and find nothing in it material or in the least prejudicial beyond matters which were fully gone into and brought out by the evidence voluntarily offered by the appellants in their defense. If the police report was technically hearsay evidence, the same facts from the mouths of appellants' witnesses cured the error, and it would be an idle thing to re-

verse a judgment because of a technical error which could not be prejudicial.

The third assignment of error raises the question of the sufficiency of the evidence to take the case to the jury.

The accident happened in the night time, and the chief contest was as to the identity of the automobile which caused the death of the decedent. There were but two eye witnesses of the accident, both apparently disinterested. One quite definitely identified the offending car as a red top taxicab, and on cross-examination little was elicited to weaken or throw doubt upon his testimony given in chief. The other eye witness said, in effect, that the top of the car was a medium red the same as on red top taxicabs, and on cross-examination, in answer to the question, ''Do you know whether or not it was a red top taxicab that struck this man?'' he answered, ''No, sir.''

Appellant seems to urge that all this did not amount to more than a scintilla of evidence. We cannot so hold. The testimony of one disinterested eye witness as direct and positive as a truthful man is likely to give of what he saw under such circumstances as here obtain, corroborated in part by the only other eye witness and not contradicted by anything said by either, or by the surrounding conditions and circumstances, surely goes beyond being a mere scintilla of evidence, and to hold otherwise would be to invade the province of the jury.

Under this heading, it is also urged that the proof was insufficient to take the case to the jury because, even if the identity of the car was sufficiently shown as being a red top taxicab, still there was no proof as to the identity of the driver or that the car was being operated in the furtherance of the cab company's business. *Feldtman v. Russak,* 141 Wash. 287,

251 Pac. 572, is cited in support of this argument. In the case cited, a broad rule was laid down applicable to the facts there shown, but not applicable, we think, to the facts in this case. The appellant cab company at the time was operating thirty-two taxicabs, serving the public throughout the field of its activities, and its cars within that field must be held presumptively to be operating in the usual course of its business.

While this particular question was not specially raised or discussed in *Phelan v. Jones,* 164 Wash. 640, 4 P. (2d) 516, it was necessarily there involved, and under the authority of that case, we hold that a commercial vehicle such as a taxicab within its regular territory, or a truck upon its regular run, is presumptively operating in the usual course of the business of the master or owner. This presumption, like all other presumptions, is, of course, rebuttable and subject to the usual rule governing similar presumptions.

What has just been said disposes of the errors assigned upon the instructions given to the jury and of all other errors assigned except those relating to the appellant Home Indemnity Company.

The several errors assigned on behalf of the indemnity company can all be discussed together.

We have already quoted that part of the complaint which seeks to charge the indemnity company; and giving the complaint a liberal construction, as is the rule in this state, it seems to be a declaration upon all of the bonds made by the indemnity company upon all of the taxicabs operated by the cab company. In the absence of some motion to require more definiteness, we see no reason why, especially after verdict, the complaint is not good.

It appears, speaking generally, that the cab company operated some thirty-two cabs, and that the indemnity

company became surety on a statutory bond for each of these cabs.

Rem. Rev. Stat., § 6383, requires:

" . . . such applicant for each motor vehicle intended to be so operated shall deposit and keep on file with the secretary of state a bond running to the state of Washington in the penal sum of twenty-five hundred dollars, with good and sufficient surety company licensed to do business in this state as surety to be approved by the secretary of state, conditioned for the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, his agents or employees in the conduct of said business or in the operation of any motor propelled vehicle used in transporting passengers for hire over or along any public street, road or highway. . . ."

By means of these several bonds and all of them, the indemnity company became bound to respond in damages to the limit of the bond in each particular case for injuries caused by the negligent operation of each and every one of the taxicabs operated by the cab company. Each bond was a separate contract, it is true, but all taken together covered the whole field, and the indemnity company thus became bound equally to respond in each case of negligent operations, without reference to which one of the thirty-two cabs caused the damage. No one bond imposed any greater or any less liability than any other.

Or, stated in different form: The jury found that one of the cab company's taxicabs caused the death. It is admitted that the indemnity company was surety on the bond for each taxicab operated by the cab company. Therefore, it is established absolutely, for present purposes, that the indemnity company was surety on the bond given for the taxicab that caused

the death. Shall the surety escape liability because the complaining party cannot give the number of the particular bond, or pick it out from among the whole mass of bonds, each one of which, as relates to liability, is exactly like every other one? To answer in the affirmative would be to put a premium upon fraudulent concealment and to defeat a legislative intent in every case where the injured party lacked substantial evidence of identity.

The section of the statute from which we have quoted and the succeeding section (Rem. Rev. Stat., § 6384, the statute, of course, being read into the bond under our rule), plainly show the legislative intent to provide a surety who must respond in each case where the principal is liable; and where, as here, it is impossible for the person suing to identify the particular taxicab, it would seem that, in the interest of justice, that failure should not provide a way of release to the surety unless it is prejudiced by the lack of identification.

We have searched extensively for something in the reported decisions which would throw light upon this question, but have found nothing in point. Industry of counsel has revealed nothing which we consider decisive. Appellant cites and relies upon *American Savings Bank & Trust Co. v. National Surety Co.*, 91 Wash. 307, 157 Pac. 877, L. R. A. 1916F, 435, but that case is clearly distinguishable, because there the surety was seriously prejudiced by the failure to identify the particular employee through whose act the loss occurred.

The opinion points out three particulars in which the surety was, or might be, prejudiced: (1) The surety could not avail itself of the defense that the employee who committed the wrong was known to the employer to be dishonest before the particular act occurred; (2) the surety could not call upon the employer to aid in the criminal prosecution of a particular em-

ployee, and, of course, there could be no blanket prosecution of two or more; and (3) the bond there considered provided that, upon the discovery of default on the part of an employee, the bond as to such employee should be at an end and the paid premium should be deemed fully earned. This was of vital importance, especially because of the release from further liability for the acts of a dishonest employee who, not being identified, might be continued in the employment and repeat his acts of dishonesty. On the last question, the court there said:

"Now suppose that this case had been permitted to go to the jury and a verdict had been returned against respondent. As to which one of these two or three employees having access to the particular funds from which the $8,500 was abstracted would respondent's liability under the bond cease as to subsequent acts of such employee? Manifestly the verdict would furnish no answer to this question."

Our rules, Rule of Practice II, § 2, 140 Wash. xxxvi (Rem. Rev. Stat., § 308-2), permit one to sue several defendants when in doubt as to which, if any, is liable; and by a parity of reasoning, surely, when a defendant may be liable upon any one of many written undertakings, and it is impossible to ascertain upon which one the liability has arisen, the plaintiff should be permitted to proceed as was done here until it develops that the defendant will be prejudiced unless a particular identification be made.

Finding no reversible error, the judgment is affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.